People v Vanderbilt (2025 NY Slip Op 02682)

People v Vanderbilt

2025 NY Slip Op 02682

Decided on May 2, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 2, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: BANNISTER, J.P., MONTOUR, SMITH, NOWAK, AND DELCONTE, JJ.

218 KA 23-02073

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
NORMAN H. VANDERBILT, DEFENDANT-APPELLANT. 

ANDREW D. CORREIA, PUBLIC DEFENDER, LYONS (BRIAN SHIFFRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.
CHRISTINE K. CALLANAN, ACTING DISTRICT ATTORNEY, LYONS (R. MICHAEL TANTILLO OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Wayne County Court (Richard M. Healy, J.), rendered January 25, 2023. The judgment convicted defendant, upon a jury verdict, of assault in the second degree, resisting arrest and reckless driving. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by vacating the sentence imposed on the conviction of reckless driving under count 3 of the indictment, and as modified the judgment is affirmed, and the matter is remitted to Wayne County Court for resentencing on that count.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of assault in the second degree (Penal Law § 120.05 [3]), resisting arrest (§ 205.30), and reckless driving (Vehicle and Traffic Law § 1212). The charges arose from an incident in which defendant, who was operating a motorcycle affixed with an illegal license plate while he lacked a valid driver's license, fled from a traffic stop through a village at a high rate of speed and eventually engaged in a physical struggle with the arresting police officer in a residential yard, resulting in injuries to the officer.
We note at the outset that the notice of appeal contains an inaccurate description of the judgment inasmuch as its statement of the crimes of conviction is incomplete (see People v Carter, 200 AD3d 1312, 1313 n [3d Dept 2021]; People v Delgado, 183 AD3d 1236, 1236 [4th Dept 2020], lv denied 35 NY3d 1044 [2020]). The notice of appeal is otherwise accurate, however, and we therefore exercise our discretion, in the interest of justice, and treat the notice of appeal as valid (see CPL 460.10 [6]; Delgado, 183 AD3d at 1236).
Defendant contends that County Court erred in granting his request to proceed pro se because the court failed to conduct a sufficient inquiry to ensure that his waiver of the right to counsel was knowing, intelligent, and voluntary. We reject that contention.
"It is well settled that a criminal defendant's constitutional right to counsel concomitantly includes the right to refuse appointed counsel" (Matter of Kathleen K. [Steven K.], 17 NY3d 380, 384-385 [2011]; see US Const Amend VI; NY Const, art I, § 6; Faretta v California, 422 US 806, 817 [1975]; People v McIntyre, 36 NY2d 10, 15 [1974]). In other words, there is a constitutional right "to self-representation at trial, . . . and [a] corresponding—and sometimes competing—requirement that the state provide [a] defendant competent counsel to conduct [their] defense" (People v Stone, 22 NY3d 520, 525 [2014]). Indeed, the Court of Appeals has recognized that there is an "inherent conflict between a defendant's right to counsel and the right of self-representation" (People v Arroyo, 98 NY2d 101, 102 [2002]). "In light of the multifaceted problems generated by a motion to proceed pro se, the task of the trial court is exceedingly difficult" (McIntyre, 36 NY2d at 14). The right to self-representation is therefore "subject to certain restrictions," which serve "to promote the orderly administration of justice and [*2]to prevent subsequent attack on a verdict claiming a denial of fundamental fairness" (id. at 17). Consequently, "[a] defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues" (id.).
"If a timely and unequivocal request has been asserted, then the trial court is obligated to conduct a 'searching inquiry' to ensure that the defendant's waiver is knowing, intelligent, and voluntary" (Kathleen K., 17 NY3d at 385; see People v Crampe, 17 NY3d 469, 481-482 [2011], cert denied 565 US 1261 [2012]). The inquiry must be "aimed at insuring that the defendant '[is] aware of the dangers and disadvantages of proceeding without counsel' " (People v Providence, 2 NY3d 579, 582 [2004], quoting People v Slaughter, 78 NY2d 485, 492 [1991]; see People v Blue, 42 NY3d 584, 591 [2024], rearg denied 42 NY3d 1073 [2025]). "Additionally, a searching inquiry encompasses consideration of a defendant's pedigree since such factors as age, level of education, occupation and previous exposure to the legal system may bear on a waiver's validity" (Crampe, 17 NY3d at 482; see Blue, 42 NY3d at 591; Providence, 2 NY3d at 582-583). Nonetheless, "[m]indful that there is simply no one-size-fits-all format for a searching inquiry . . . , [the Court of Appeals] ha[s] eschewed application of any rigid formula and endorsed the use of a nonformalistic, flexible inquiry" (Blue, 42 NY3d at 592 [internal quotation marks omitted]; see Providence, 2 NY3d at 583).
"When a defendant challenges the validity of their waiver on appeal, 'a reviewing court may look to the whole record, not simply to the questions asked and answers given during a waiver colloquy,' to determine whether the defendant effectively waived counsel" (Blue, 42 NY3d at 592, quoting Providence, 2 NY3d at 581). "In reviewing the record, '[t]he critical consideration is defendant's knowledge at the point in time when he first waived his right to counsel' " (id., quoting Crampe, 17 NY3d at 483). "Although post-colloquy proceedings cannot retrospectively cur[e] an invalid waiver, the record as a whole may . . . be considered when a court assesses whether the accused [was] aware of the dangers of self-representation at the time of the waiver colloquy" (id. [internal quotation marks omitted]).
Here, we note initially that defendant "does not dispute that his request to represent himself was unequivocal" under the first prong of the McIntyre test (People v Chandler, 109 AD3d 1202, 1203 [4th Dept 2013], lv denied 23 NY3d 1019 [2014]). In any event, the record demonstrates that defendant's request to proceed pro se was unequivocal inasmuch as defendant, from his first appearance through trial, repeatedly and steadfastly "declined to accept assigned counsel" or to retain an attorney and "adhered to his desire to represent and speak for himself" (People v Yu-Jen Chang, 92 AD3d 1132, 1133 [3d Dept 2012]; see People v Dixon, 42 NY3d 609, 618-619 [2024]). "[A] request for self-representation does not require the recitation of '[a] talismanic formula' to alert a trial court" and, here, defendant's statements "reflect[ed] a purposeful decision to relinquish the benefit of counsel and proceed singularly" (Kathleen K., 17 NY3d at 386; see People v Barksdale, 191 AD3d 1370, 1372 [4th Dept 2021], lv denied 36 NY3d 1118 [2021]).
We reject defendant's assertion that he did not effectively waive his right to counsel under the second prong of McIntyre. Upon our review of "the whole record, not simply . . . the questions asked and answers given during [the] waiver colloquy" (Providence, 2 NY3d at 581; see Blue, 42 NY3d at 592), we conclude that defendant made a knowing, voluntary and intelligent waiver of his right to counsel (see e.g. People v Abdullah, 194 AD3d 1346, 1346-1347 [4th Dept 2021], lv denied 37 NY3d 990 [2021]; People v Robinson, 193 AD3d 1393, 1394 [4th Dept 2021], lv denied 37 NY3d 968 [2021]). The record establishes that the court conducted a sufficiently searching inquiry to ensure that defendant was " 'aware of the dangers and disadvantages of self-representation' " (Providence, 2 NY3d at 582; see Abdullah, 194 AD3d at 1347). In particular, the court repeatedly and strongly implored defendant prior to the waiver colloquy to avail himself of the right to counsel through which he would have the assistance of a highly trained legal professional and, during the colloquy itself, the court explained at length, based on language from the model colloquy (see NY Model Colloquies, Waiver of Counsel), among other things, that a person untrained in the law such as defendant would be at a disadvantage in defending themselves, that defendant ran the risk of making evidentiary mistakes, and that defendant would be held to the same standard of conduct as an attorney (see People v Vivenzio, 62 NY2d 775, 776 [1984]).
Defendant nonetheless asserts that the court's inquiry was deficient because the court failed to specifically ask him pedigree questions. That assertion lacks merit. "[A]lthough the 'better practice' is for the trial judge to interrogate the defendant about various topics relevant to self-representation in a criminal case—such as the defendant's age, education, occupation, and prior experience with the criminal justice system—the Court of Appeals in Providence nevertheless reiterated that 'a waiver of the right to counsel will not be deemed ineffective simply because a trial judge does not ask questions designed to elicit each of the [various] specific items of information' " (People v Rogers, 186 AD3d 1046, 1047-1048 [4th Dept 2020], lv denied 36 NY3d 931 [2020], quoting Providence, 2 NY3d at 583). Moreover, even in the absence of specific pedigree questions during the colloquy, the record establishes that the court " 'had numerous opportunities to see and hear . . . defendant firsthand, and, thus, had general knowledge of defendant's age, literacy and familiarity with the criminal justice system' " (Chandler, 109 AD3d at 1203; see Providence, 2 NY3d at 583-584; Abdullah, 194 AD3d at 1346-1347).
To the extent that defendant further asserts that the court's inquiry was insufficient because it did not delve into defendant's capacity to represent himself, we conclude that the court did not "abuse[ ] its discretion in failing to undertake a particularized assessment of defendant's mental capacity when resolving [his] request to proceed pro se" (Stone, 22 NY3d at 529). Here, "when defendant expressed a desire to represent himself, the trial court had no reason to question his mental health, much less a basis to believe that defendant suffered from an illness severe enough to impact his ability to waive counsel and proceed pro se" (id. at 528). Moreover, defendant's "expression of strange beliefs about law did not disqualify him from exercising his right of self-representation" (People v Herbin, 187 AD3d 520, 521 [1st Dept 2020], lv denied 36 NY3d 1051 [2021]; see People v Stamps, 296 AD2d 325, 326 [1st Dept 2002], lv denied 99 NY2d 540 [2002], reconsideration denied 100 NY2d 543 [2003]; see generally Stone, 22 NY3d at 528-529). Defendant nevertheless proposes that we reward his recalcitrant adherence to fringe theories by faulting the court for failing to receive sufficiently responsive answers from defendant regarding his awareness of the dangers and disadvantages of proceeding without counsel. We reject defendant's attempt to "pervert the system" of criminal justice in that manner (McIntyre, 36 NY2d at 17). Although defendant frequently replied to the court's questions with nonresponsive legal arguments, including that he did not "understand" how the prosecution on ostensibly illegal charges could proceed, "the record supports the conclusion that [defendant's] replies did not demonstrate a genuine lack of comprehension[ of the court's warnings], but instead indicated recalcitrance and attempts to repeatedly assert [his] bizarre legal claims" (Herbin, 187 AD3d at 521).
To the extent that defendant asserts that the court should have denied his request to proceed pro se under the third prong of McIntyre, we conclude on the record before us that defendant's assertion lacks merit because, "while he made the proceedings exceedingly difficult, he did not engage in conduct that prevented 'the fair and orderly' disposition of the charges" (Yu-Jen Chang, 92 AD3d at 1134; cf. People v Williams, 203 AD3d 1571, 1572 [4th Dept 2022], lv denied 38 NY3d 1075 [2022]).
Lastly on this issue, defendant asserts that his alleged poor performance while proceeding pro se, including his failure to file certain motions, demonstrates that the court erred in granting his request to represent himself. That assertion lacks merit. "Regardless of his lack of expertise and the rashness of his choice, defendant could choose to waive counsel [where, as here, the record reflects that] he did so knowingly and voluntarily" (Vivenzio, 62 NY2d at 776; see Barksdale, 191 AD3d at 1372; People v Malone, 119 AD3d 1352, 1355 [4th Dept 2014], lv denied 24 NY3d 1003 [2014]). It is well settled that, "even in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice with eyes open" (McIntyre, 36 NY2d at 14 [internal quotation marks omitted]; see Barksdale, 191 AD3d at 1372; Malone, 119 AD3d at 1355).
Defendant further contends that the court violated his constitutional and statutory rights by failing to provide adequate accommodations for his purported hearing impairment. We conclude that defendant failed to preserve that contention for our review (see CPL 470.05 [2]; People v Robles, 86 NY2d 763, 765 [1995]; People v Garcia-Cruz, 138 AD3d 1414, 1414 [4th Dept 2016], lv denied 28 NY3d 929 [2016]; People v Oxman, 74 Misc 3d 130[A], 2022 NY Slip [*3]Op 50131[U], *1 [App Term, 1st Dept 2022]). In any event, defendant's contention lacks merit inasmuch as the record establishes that the court "adequately addressed the isolated occasions whe[n] defendant indicated that he had not heard what was said and 'there was no obvious impairment necessitating the provision by the court, sua sponte, of' further assistance" (People v Thomas, 169 AD3d 1255, 1256 [3d Dept 2019], lv denied 33 NY3d 1036 [2019]; see People v Phillips, 265 AD2d 237, 237 [1st Dept 1999], lv denied 94 NY2d 906 [2000]).
Next, to the extent that defendant contends that he was penalized for exercising his right to trial, that contention is not preserved for our review (see People v Hurley, 75 NY2d 887, 888 [1990]; People v Vanwuyckhuyse, 224 AD3d 1315, 1317 [4th Dept 2024], lv denied 41 NY3d 967 [2024]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]; People v Elmore, 195 AD3d 1575, 1577 [4th Dept 2021], lv denied 37 NY3d 1026 [2021]).
Contrary to defendant's further contention, the sentence is not unduly harsh or severe. We conclude, however, that the discrepancy between the sentencing minutes and the court's fine, fee and surcharge order together with the certificate of disposition requires vacatur of the sentence imposed on the conviction of reckless driving under count 3 of the indictment (see People v Caldwell, 211 AD3d 1491, 1492-1493 [4th Dept 2022]; People v Settles, 192 AD3d 1510, 1512-1513 [4th Dept 2021], lv denied 37 NY3d 960 [2021]; People v Mohammed, 151 AD2d 1018, 1018-1019 [4th Dept 1989], lv denied 74 NY2d 815 [1989]). In relevant part, the minutes from the sentencing proceeding indicate that the court imposed a definite term of 30 days of imprisonment and "no fine" on the conviction of reckless driving, but the fine, fee and surcharge order signed by the court the same day, together with the certificate of disposition, indicate that the court imposed a definite term of 30 days of imprisonment and a $100 fine on that count. Inasmuch as the court may have erred in imposing the fine in its written order, and because it is well settled that courts have the " 'inherent power to correct their records, where the correction relates to mistakes, or errors, which may be termed clerical in their nature, or where it is made in order to conform the record to the truth' " (People v Minaya, 54 NY2d 360, 364 [1981], cert denied 455 US 1024 [1982]; see People v Gammon, 19 NY3d 893, 895 [2012]), we modify the judgment by vacating the sentence imposed on count 3 of the indictment and remit the matter to County Court for resentencing on that count so that the court may correct the record by indicating whether the sentence on that count is to include a fine (see Caldwell, 211 AD3d at 1493; Mohammed, 151 AD2d at 1018-1019).
Entered: May 2, 2025
Ann Dillon Flynn
Clerk of the Court